COMMONWEALTH of Pennsylvania,
Appellee

v.

Thomas HERB, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 26, 2004.
Decided June 9, 2004.

Jeanne Trivellini, Reading, for appellant.

Kelly S. Kline, Asst. Dist. Atty., Reading, for Com., appellee.

Before: STEVENS, McCAFFERY, and OLSZEWSKI, JJ.

McCAFFERY, J.

¶ 1 Appellant, Thomas Herb, asks us to determine whether the evidence admitted at the *de novo* bench trial was sufficient to sustain his conviction for driving on a

DUI-related license suspension.[1] Appellant also contends that the court erred by admitting his statements into evidence before the Commonwealth had established the *corpus delicti* of the crime of driving with a suspended license. We hold that the totality of the evidence admitted at trial was sufficient to sustain Appellant's conviction. Further, we reject Appellant's challenge to the admissibility of his statements at trial. Accordingly, we affirm Appellant's judgment of sentence.

¶ 2 The trial court summarized the pertinent facts underlying this appeal as follows:

On the date in question, June 22, 2002, Officer David Holt, a trooper for the Pennsylvania State Police, was traveling north on Ninth Street in Reading, Berks County, Pennsylvania, when he came across a Nissan truck, black in color, DNK 2195, that was parked in the middle of the roadway, right out in front of 224 North Ninth Street. (Notes of Testimony, 2/26/03, pp. 3–4). The vehicle was blocking the left lane, constituting a traffic hazard. There was no one around and no four-way flashers were on. *Id.* at 4. Trooper Holt witnessed a double parking violation, § 3353(a)(1)(i), when he came upon this vehicle in the street. *Id.* at 16. The trooper activated his lights and pulled directly behind the vehicle. He exited his cruiser and began looking for the owner. *Id* at 5. The Appellant exited a tattoo parlor and approached the trooper. The trooper asked him if he knew who was driving the vehicle and Appellant told him that the driver of the vehicle went to the store down the street. The trooper asked him if he knew which store and Appellant said that he did not. *Id.* At that time, Trooper Holt told Appellant that if the driver of the vehicle did not

return back there within a reasonable amount of time, he'd have the vehicle towed from the roadway. *Id.* at 6. Appellant went back inside the tattoo parlor and the trooper stood outside his patrol vehicle with the lights going, waiting for this person to appear. About ten minutes went by and Appellant then came back out to approach the trooper again. Appellant said to the trooper, "Officer, the person that was driving this vehicle left the keys in the tattoo parlor." At that time, Appellant asked the trooper if he could move the vehicle. The trooper told him no. *Id.* at 6. Another five or ten minutes went by; the trooper was waiting for the driver to show up. Appellant was waiting there also. After twenty more minutes, the Appellant turned around and again asked the trooper if he could move the vehicle. After the second request, because traffic was heavy, and because the Appellant had the keys in his possession at that time, the trooper had him move the vehicle to a parking spot that was available about ten or fifteen feet to the immediate left. *Id.* at 7. After Appellant moved the vehicle, the trooper thought to himself that Appellant was being deceptive. The trooper had been out there for half an hour and the person that allegedly drove the vehicle never showed up. So the trooper challenged Appellant and said, "Hey, I don't have time to play games. I want to know whether or not you were driving this vehicle and you knew to [sic] produce some identification right now." *Id.* at 8. Appellant indicated that he did not have a license. He said he had driven the vehicle to that location; that he was running some errands in the city; and that he just ran into the tattoo shop to see a friend. *Id.* at 10.

1. 75 Pa.C.S.A. § 1543(b).

Appellant produced a Pennsylvania ID card. The officer ran the ID on his computer and it came back DUI suspended. *Id.* at 15.

(Trial Court Opinion, dated October 9, 2003, at 4–5). The relevant procedural history is summarized as follows:

On August 22, 2002, District Justice Wally Scott found [Appellant] guilty of violating § 1543(b)(1) of the Vehicle Code. On August 23, 2002, [Appellant] timely filed his appeal to the Court of Common Pleas.

A trial *de novo* was held on February 26, 2003.[At] trial, [Appellant] asserted the justification defense for his actions and the corpus delecti rule. The parties were given the opportunity to file memoranda of law on these issues. On May 13, 2003, [Appellant] was found guilty of violating section 1543(b) and sentenced to pay a fine of $1000.00 plus costs and serve a term of imprisonment for ninety days. On June 10, 2003, [Appellant] filed a Notice of Appeal to the Superior Court.

(*Id.* at 1).

¶ 3 Appellant raises two issues for our review:

A. WAS NOT THE EVIDENCE INSUFFICIENT TO SUPPORT THE VERDICT, IN THAT IT ESTABLISHED THAT APPELLANT WAS JUSTIFIED IN DRIVING HIS VEHICLE A FEW FEET TO AVOID BEING A TRAFFIC HAZARD, SO THAT HE HAD NO CRIMINAL RESPONSIBILITY FOR THE DRIVING?

B. DID NOT THE TRIAL COURT ABUSE ITS DISCRETION BY ADMITTING INTO EVIDENCE STATEMENTS OF APPELLANT PRIOR TO THE COMMONWEALTH ESTABLISHING THE *CORPUS DELICTI* OF THE CHARGED OFFENSE?

(Appellant's Brief at 4).

■ ¶ 4 In his first issue, Appellant asserts that the evidence was insufficient to support a conviction for driving while his license was suspended (DUI-related), because he proved the affirmative defense of justification. Specifically, Appellant contends that Trooper Holt gave him permission to move the truck from where it was double-parked to a legal parking space, which relieved him from criminal responsibility for driving with a suspended license. We disagree.

■ ¶ 5 Our scope of review in a license suspension case is limited to determining whether the trial court's findings are supported by competent evidence in the record, whether the trial court committed an error of law, and whether the court's decision is a manifest abuse of discretion. *Commonwealth v. Bolton*, 831 A.2d 734, 735 (Pa.Super.2003) (citing *Commonwealth v. Vetrini*, 734 A.2d 404, 406 (Pa.Super.1999)). In addition:

As for Appellant's first issue, the standard applied in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Vetrini* at 406 (citations omitted). In applying [this] test, the appellate court may not weigh the evidence and substitute its judgment for that of the fact-finder. In addition, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter

of law no probability of fact may be drawn from the combined circumstances. *Id.* The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Id.* Appellant had been convicted of violating Section 1543(b) of the Vehicle Code, which states:

> A person who drives a motor vehicle on any highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) or because of a violation of section 1547(b)(1)(relating to suspension for refusal) or 3731 or is suspended under section 1581 (relating to Driver's License Compact) for an offense substantially similar to a violation of section 3731 shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000.00 and to undergo imprisonment for a period of not less than 90 days.

75 Pa.C.S.A. § 1543(b)(1).

In order to uphold a conviction for driving while license is suspended for driving under the influence, the Commonwealth must establish that the defendant had actual notice that his license was suspended. *Commonwealth v. Brewington,* 779 A.2d 525 (Pa.Super.2001) *appeal denied* 790 A.2d 1013, 567 Pa. 755. The Commonwealth need not produce direct evidence of driving, but may instead rely on circumstantial evidence creating the inference that the vehicle had been in motion in order to meet its evidentiary burden. *Commonwealth v. Costa–Hernandez,* 802 A.2d 671 (Pa.Super.2002).

\*   \*   \*   \*   \*   \*

Based on the evidence presented, we find that the Commonwealth met its burden beyond a reasonable doubt. Appellant was the one who drove the vehicle to the scene and double parked it. He was the one who drove while his license was suspended. He admitted both facts.

\*   \*   \*   \*   \*   \*

We need not concern ourselves with whether [Appellant] was justified[2] in

---

**2.** The Superior Court has recently held that the justification defense is applicable to the charge of violating 75 Pa.C.S.A. § 1543(b). *Commonwealth v. Manera,* 827 A.2d 482 (Pa.Super.2003). "Justification" is defined in 18 Pa.C.S.A. § 503 as follows:

Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

1. the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;
2. neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and,
3. a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.C.S.A. § 503(a).

In *Commonwealth v. Capitolo,* 508 Pa. 372, 498 A.2d 806 (1985), our Supreme Court restated the elements of a successful justification defense as follows:

1. that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;

[driving] the car [before] he requested the officer to let him move it. Appellant admitted that he had driven the vehicle to the scene and had double parked it to run into the tattoo shop to see a friend before he became involved with the trooper.

Justification relates, if at all, to a later point in time when Appellant moved the vehicle after he asked the trooper if he could do so, and after he obtained the trooper's consent to move the car. No evidence suggests justification at the time Appellant drove to the scene and double parked.

Assuming *arguendo,* Appellant could raise this affirmative defense, he had the burden of proving it. He could not meet his burden. First, he was not faced with a clear and imminent harm. The officer had parked his cruiser behind the double parked vehicle and activated his overhead lights to warn motorists that there was a hazard in the road. (Notes of Testimony, 2/26/03, pp. 5–8,19). There was no imminent harm because of the double parked vehicle due to the trooper's actions. Second, Appellant had several legal alternatives that would have been effective in abating the harm. The officer could have towed the double-parked vehicle to another location, thereby removing the hazard. Appellant was told this and he therefore knew that there was an alternative to driving the vehicle while his license was revoked. (*Id.* at pp. 5–6). Appellant could also have given the keys to the trooper and asked the trooper to move the vehicle.

(Trial Court Opinion at 2–7). Consequently, the trial court reasoned that the evidence produced by the Commonwealth at the trial *de novo* was sufficient to prove Appellant's guilt beyond a reasonable doubt.

¶ 6 After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Forrest G. Schaeffer, it is our determination that there is no merit to Appellant's first issue. The trial court opinion comprehensively discusses and properly disposes of the issue presented. Accordingly, we affirm as to Appellant's first issue on the basis of that opinion.

■ ¶ 7 In his second issue, Appellant maintains that the trial court erred in admitting into evidence his statements to Trooper Holt that he did not have a license, had driven the truck while running errands, and had parked it at the location where Trooper Holt first observed it. Appellant posits that the Commonwealth needed, and failed, to establish by independent evidence the crime of operating a vehicle with a DUI-related suspension before Appellant's statements could be admitted at trial pursuant to the *corpus delicti* rule. Because Trooper Holt testified that he had not seen Appellant drive to the location, and the engine was not running when the trooper arrived, Appellant insists the trial court erred by allowing Trooper Holt to testify concerning Appellant's statements. (Appellant's Brief at 11). We reject Appellant's claim.

■ ¶ 8 The *corpus delicti* rule is an evidentiary one. *Commonwealth v. Verticelli,* 550 Pa. 435, 441, 706 A.2d 820,

---

2. that the actor could reasonably expect that the actor's action's would be effective in avoiding this greater harm,

3. that there is no legal alternative which will be effective in abating the harm; and

4. that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

*Id.* at 809.

822 (1998). On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference. *Commonwealth v. Bracey*, 831 A.2d 678, 681 (Pa.Super.2003), *appeal denied*, 577 Pa. 685, 844 A.2d 551 (2004).

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. *Commonwealth v. Cunningham*, 805 A.2d 566, 572 (Pa.Super.2002), *appeal denied*, 573 Pa. 663, 820 A.2d 703 (2003). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. *Commonwealth v. Cameron*, 780 A.2d 688, 692 (Pa.Super.2001).

*Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super.2003).

■■■■■ ¶ 9 Pennsylvania law precludes the admissibility of a confession absent proof of the *corpus delicti*, literally, "the body of a crime." *Commonwealth v. Taylor*, 574 Pa. 390, 395, 831 A.2d 587, 590 (2003) (citation omitted). However, the rule is not "a condition precedent to the admissibility of the statements" of an accused. *Id.* "Rather, the rule seeks to ensure that the Commonwealth has established the occurrence of a crime before introducing the statements or confessions of the accused to demonstrate that the accused committed the crime. The rule was adopted to avoid the injustice of a conviction where no crime exists." *Id.*

■■■■■ ¶ 10 Only inculpatory statements fall within the scope of the *corpus delicti* rule. *Commonwealth v. McMullen*, 545 Pa. 361, 368, 681 A.2d 717, 721 (1996). Before such a statement may be admitted into evidence, the Commonwealth must establish: 1) a loss has occurred and 2) the loss occurred as a result of criminal activity. *Taylor, supra* at 395, 831 A.2d at 590. Only then may the Commonwealth introduce a statement to show that the defendant is responsible for the loss. *Id.* For the purpose of admission, the *corpus delicti* may be established by a preponderance of the evidence. *Commonwealth v. Reyes*, 545 Pa. 374, 681 A.2d 724, 727 (1996), *cert. denied*, 520 U.S. 1174, 117 S.Ct. 1445, 137 L.Ed.2d 551 (1997).[3] Moreover, the Commonwealth may establish the *corpus delicti* with circumstantial evidence. *Id.* at 380–82, 681 A.2d at 727; *Commonwealth v. Rivera*, 828 A.2d 1094, 1103–04 (Pa.Super.2003), *appeal denied*, 577 Pa. 672, 842 A.2d 406 (2004) (quotation omitted).[4]

■■■■■ ¶ 11 In addition, an exception to the rule of *corpus delicti* exists, which is

---

**3.** Establishing the *corpus delicti* is a two-step process. *Commonwealth v. Rivera*, 828 A.2d 1094, 1104 n. 10 (Pa.Super.2003), *appeal denied*, 577 Pa. 672, 842 A.2d 406 (2004) (citing *Reyes, supra* ). The first is admission, which requires a showing by a preponderance of the evidence. The second is consideration by the fact-finder, which requires a showing of the *corpus delicti* beyond a reasonable doubt. *Id.*

**4.** In *Rivera*, the appellant complained that the trial court abused its discretion in admitting into evidence his statements implicating him in the murder of his twenty-month-old daughter, where the Commonwealth "offered no body, no weapon, no blood, no DNA and no eyewitnesses." *Rivera*, 828 A.2d at 1103. This Court explained that under the *corpus delicti* rule, the Commonwealth was required to establish, through direct or circumstantial evidence, that the child was dead and that her death was the result of criminal means. *Id.* at 1104. As the Commonwealth had offered sufficient evidence to establish those facts, our Court held that the appellant's confession was admissible and affirmed the judgment of sentence. *Id.* at 1105.

commonly referred to as the "closely related crimes exception." *Taylor, supra* at 396–97, 831 A.2d at 591. Pursuant to this exception, inculpatory statements may be admissible as to *all* crimes charged even though the Commonwealth's independent evidence is able to establish the *corpus delicti* of only one. For the exception to apply, the relationship between the crimes charged must be sufficiently close so as to ensure that the purpose underlying the *corpus delicti* rule is not violated. *Id.* at 401–03, 831 A.2d at 594.

> The purpose behind the *corpus delicti* rule is the ultimate consideration in determining whether two crimes are closely related so as to implicate the exception. Where the relationship between the crimes to which the defendant has confessed is close and the policy underlying the *corpus delicti* rule—to avoid convictions for crimes that did not occur—is not violated, the exception renders the confession admissible for all closely related crimes.

*Id.* at 404, 831 A.2d at 595–96.[5] Thus, where the Commonwealth establishes the *corpus delicti* of one crime, an appellant's inculpatory statements may be admissible as evidence for all crimes which are closely related. *Id.* Whether the crimes are sufficiently close to justify invoking the exception must be determined on a case by case basis. *Id.* at 399–401, 831 A.2d at 593.

¶ 12 Instantly, the Commonwealth established the following facts as summarized by the trial court. On June 22, 2002, Trooper Holt was driving north on Ninth Street in Reading, Berks County, when he came upon a black Nissan truck parked in the middle of the road, blocking the left lane and constituting a traffic hazard.[6] The officer activated his lights, pulled up behind the vehicle, and exited his cruiser to begin looking for the owner of the truck. Appellant approached the officer three times over the next thirty (30) minutes: once to say the truck's owner went to a store down the street, and twice with the keys to the truck in hand to ask the officer if Appellant could move the truck. After Trooper Holt finally acquiesced and allowed Appellant to move the truck, he challenged Appellant and asked to see some identification.[7] (Trial Court Opinion at 4–5). At this point in the trooper's testimony, the Commonwealth had established the *corpus delicti* of the offense of double-parking the vehicle in violation of 75 Pa.C.S.A. § 3353(a)(1)(i). Additionally, the Commonwealth had established (1) that the Nissan truck was at a location, in the middle of the road, where someone had driven it and left it double-parked; (2) that Appellant had come out of a nearby shop and had approached the trooper at that location; and (3) that Appellant had the keys to the truck in his possession. We conclude that the summary offenses of double-parking in violation of 75 Pa.C.S.A. § 3353(a)(1)(i) and driving on a DUI-related license suspension under 75 Pa.C.S.A. § 1543(b) are sufficiently close under the facts as they exist in this case to implicate the "closely related crimes exception" to

---

5. In *Taylor,* our Supreme Court made it clear that the crimes need only be "sufficiently close" rather than share a common element for the "closely related crimes exception" to apply, thereby abrogating *Verticelli,* 550 Pa. 435, 706 A.2d 820. *Taylor, supra.*

6. Trooper Holt issued a citation to Appellant for the double-parking violation, a summary offense under 75 Pa.C.S. § 3353(a)(1)(i).

7. The amount of time that had passed waiting for the truck's owner to appear combined with Appellant's suspicious behavior prompted the trooper to ask Appellant for some identification.

the *corpus delicti* rule. Accordingly, we determine that the trial court properly allowed Trooper Holt to continue with his testimony.

¶ 13 The trooper then testified that he asked Appellant for identification and Appellant responded that he did not have a license.[8] According to the trooper, Appellant also admitted he had been running errands, had been driving the truck, and had left it at the location where the officer had found it double-parked. Appellant produced a Pennsylvania ID card, which Trooper Holt used to run a computer check. The computer check revealed Appellant's DUI-related suspension. Trooper Holt then contacted his dispatcher, who confirmed the license suspension and that the truck was registered to a female residing at Appellant's address. (N.T. Trial, 2/26/03, at 15). In addition, the Commonwealth introduced into evidence a certified copy of Appellant's Driving Record from PennDOT. As Trooper Holt noted in his testimony, Appellant's driving history contained 13 convictions for driving under suspension, including the suspension, DUI related, in effect on the date in question. (*Id.* at 28).

¶ 14 For all of the foregoing reasons, we opine that the independent evidence, in conjunction with Appellant's statements, is sufficient to overcome the danger of a conviction where no crime was actually committed. *See Taylor, supra.* Accordingly, we conclude that the trial court properly admitted Appellant's statements

at the *de novo* trial and affirm Appellant's judgment of sentence.

¶ 15 Judgment of sentence affirmed.

---

8. In his brief, Appellant asserts that there was no evidence of the crime of driving on a DUI-related license suspension apart from his statements "that he drove the vehicle when his license was suspended, DUI related". We note, however, that Trooper Holt testified the statement was that Appellant did not have a license. The trooper did not testify that Appellant provided an explanation at that time as to why he did not have a license. According to the testimony, it was not until the trooper ran a computer check that he learned Appellant's license was "suspended, DUI related". (N.T. Trial, 2/26/03, at 10 and 15). Assuming, *arguendo*, that Appellant's statement was inculpatory, the trial court nevertheless properly allowed its admission into evidence.