J-S07043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AINSLEY ANDRE BOND | |
| Appellant | No. 879 MDA 2014 |

Appeal from the Judgment of Sentence May 6, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-SA-0000008-2014

BEFORE:  BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 26, 2015**

Ainsley Andre Bond appeals from the judgment of sentence imposed on May 6, 2014, in the Court of Common Pleas of Cumberland County.  In a *de novo* summary trial, Bond was found guilty of driving under suspension.[1] The trial court sentenced Bond to a term of imprisonment of not less than 90

---

[1] Bond was convicted of violating Section 1543(b)(1) of the Motor Vehicle Code, which provides, in pertinent part:

> A person who drives a motor vehicle on a highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked … shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $ 500 and to undergo imprisonment for a period of not less than 60 days nor more than 90 days.

75 Pa.C.S. § 1543(b)(1).

days. In this appeal, the sole issue is a challenge to the sufficiency of the evidence.[2, 3] We affirm based upon on the sound reasoning of the trial court.

The trial court's opinion fully sets forth the relevant facts and procedural history of this case, and therefore, we do not restate them here. *See* Trial Court Opinion, 6/26/2014, at 1–5.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable M. L. Ebert, Jr., we conclude Bond's issue merits no relief. *See* Trial Court Opinion, *supra* at 5–9 (finding: (1) the critical element in this case is whether Bond was driving,[4] (2) Commonwealth presented two witnesses, who both

_____

[2] Specifically, Bond presents the following question:

> Was the evidence presented at trial sufficient to sustain a conviction of driving under suspension when Trooper [Nicole] Mark did not see [Bond] driving a car, and the Commonwealth only presented the testimony of two witnesses, each of whom had strong motive to fabricate incriminating testimony against [Bond], to prove that he drove his wife's vehicle?

Bond's Brief, at 5.

[3] Bond timely complied with the trial court's order to file a Ra.R.A.P. 1925(b) statement of matters complained of on appeal.

[4] The trial court noted that Bond did not appear to contest the element of driving on a highway, and this element was established by the testimony of one of the Commonwealth witnesses who stated that Bond was driving on Holly Pike, Route 34. The trial court further noted that Bond did not contest that he had notice of his license suspension. *See* Trial Court Opinion, 6/26/2014, at 6 n.35.

testified they saw Bond driving on September 29, 2013;   (2) the Commonwealth's witnesses were credible and not clearly biased against Bond; (3) the Commonwealth's witnesses were more credible than Bond's witnesses;[5] (4) there was also  circumstantial evidence tending to show that Bond drove that day, namely, (a) Bond was at his new apartment with the truck, and his wife was at the old apartment, (b) one of the witnesses heard Bond's wife call him and tell him the trooper was there and not to drive back, and Bond then walked back to the apartment, (c) Bond indicated he believed his international license gave him permission to drive). Accordingly, we adopt the trial court's opinion as dispositive of the issue raised in this appeal.

Judgment of sentence affirmed.[6]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2015

---

[5] We note that this finding relates to the weight of the evidence, which is not at issue.

[6] In the event of further proceedings, the parties are directed to attach a copy of the Trial Court Opinion dated June 26, 2014.

COMMONWEALTH

V.

AINSLEY ANDRE BOND
CITATION NO. T1889733-6

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
: CP – 21- SA – 0008 – 2014
:
: CHARGES: DRIVING UNDER SUSPENSION
:
: AFFIANT: TPR. NICOLE MARK

### IN RE: OPINION PURSUANT TO PA.R.A.P. 1925

Ebert, J., June 26, 2014 –

Defendant, Ainsley Andre Bond, appeals his conviction for driving under suspension following a de novo summary trial held on April 15, 2014. Defendant complains of the following error on appeal:

> There was insufficient evidence to sustain a conviction for driving under suspension – DUI related because the record does not support the determination that Defendant drove when the affiant did not witness Defendant driving and relied on the assertions of two lay witnesses who exhibited clear bias toward Defendant from past dealings.[1]

### Statement of Facts

On September 29, 2013, Amanda Barbour noticed the back window on her car was smashed and told Gordon Bowermaster, the groundskeeper and apartment manager at the apartment complex where she resides in Mount Holly Springs, Cumberland County, Pennsylvania.[2] Amanda then called the police and Trooper Nicole Mark arrived at the scene.[3] Amanda told Trooper Mark that she believed Defendant

---

[1] Concise Statement of the Errors Complained of on Appeal, filed Jun 10, 2014
[2] Notes of Testimony, In Re: Appeal from Summary Conviction, 20, April 15, 2014 (hereinafter N.T. __ )
[3] N.T. 5

A-1

was responsible for damaging her window.[4] Gordon and Amanda also told Trooper Mark that Defendant was moving that day and that they saw him driving.[5]

After receiving Defendant's name, Trooper Mark ran the Defendant's driving record on her patrol car computer and ascertained that his Pennsylvania driver's license was currently DUI suspended.[6] In fact, Defendant's Pennsylvania driver's license had been suspended since 2005.[7] While she was running his information, Defendant walked up to the apartment complex.[8] After Defendant arrived, Trooper Mark issued Defendant a traffic citation for driving under suspension based on all the information she had received.[9]

Gordon testified that while he and Amanda were waiting for the officer to arrive that day, he saw Defendant driving. He stated that Defendant and his wife were moving out of their apartment and he saw Defendant driving at least two or three times that day around 9:30-10:00 a.m. in a black Ford Ranger.[10] Gordon was about 200 feet away from the vehicle when Defendant was driving and he had a clear view of the driver's side of the truck. Gordon has known Defendant for about six years and was familiar with the type of vehicle Defendant drove.[11] Gordon relayed this information to Trooper Mark and also provided her with a photograph of Defendant's license plate.[12] Gordon also testified Claudine Bond, Defendant's wife, was at the apartment when Trooper

---

[4] N.T. 6
[5] N.T. 7-8
[6] N.T. 6; Com. Ex. 1
[7] N.T. 8; Com. Ex. 1
[8] N.T. 6
[9] N.T. 8
[10] N.T. 14-15, 17
[11] N.T. 16
[12] N.T. 18. Gordon testified he took the picture of Defendant's license plate when the landlord of the apartment complex requested him to.

Mark arrived and she called Defendant to tell him the trooper was there and not to drive back.[13] It was at this point that Defendant walked back to the apartment complex.[14]

Amanda, who lived below Defendant at the apartment complex, testified she saw Defendant driving "at least three or four" times on September 29, 2013.[15] She estimated she was probably 50 feet away from Defendant's vehicle at some point while he was driving and she had a clear view of him.[16] She saw Defendant driving on the Holly Pike, (Pa. Route 34) that day.[17] Amanda knew Defendant drove a black truck, but did not know the model.[18] Amanda was not aware that Defendant was not licensed to drive until this incident, because Defendant had previously told her he had a special license and was able to drive. In fact, Amanda testified she saw Defendant drive every day.[19]

Defendant maintained that he did not drive on September 29, 2013.[20] While he maintains that he was not driving on September 29, 2013, Defendant testified that he has an international driver's license which his brother-in-law procured for him from Texas.[21] Defendant stated he has never used this international driver's license in the United States, but indicated he believed it gave him the privilege to drive in Pennsylvania.[22]

---

[13] N.T. 14, 45
[14] N.T. 45
[15] N.T. 22, 23
[16] N.T. 22
[17] N.T. 24
[18] N.T. 22
[19] N.T. 21, 23
[20] N.T. 41
[21] N.T. 40-41. Defendant stated that he mentioned to Amanda that he had this special license along with other things he was studying. Defendant and his brother-in-law are "into studying about the UCC and sovereignty", and Defendant likes to mention these things to other people.
[22] N.T. 43

Defendant testified that his wife, Claudine Bond, and his friend, Martin Brinton, were helping with the move on September 29, 2013. Since the new apartment was only a few blocks away, Claudine would drive the truck to the new apartment and Defendant would remain there to unload the truck, while Claudine walked back to the old apartment to load another vehicle.[23] Martin testified that he was helping Defendant and Claudine move.[24] Martin stated that he did not see Defendant drive that day.[25] Martin said they used both Defendant's truck and his truck to move, but Defendant's wife was driving Defendant's truck the entire day.[26] Claudine also testified that Defendant did not drive at all that day.[27] She testified that "we would take the truck down, [Defendant and Martin] would unload the trucks" and she would come back to get her car to take down to the new apartment.[28]

Defendant also indicated that both Amanda and Gordon had problems with him. Defendant testified that he made complaints against Amanda because of the traffic and noise at her apartment.[29] There also had been an argument between Defendant and Amanda's husband.[30] However, Amanda testified that she had no disagreements with Defendant and was neighborly to him.[31] Defendant also testified that he did not get along with Gordon Bowermaster because Gordon had a pit bull and dogs were not allowed on the lease. Defendant worried the dog would harm his children.[32] Gordon

---

[23] N.T. 39-40
[24] N.T. 27
[25] N.T. 28
[26] N.T. 28
[27] N.T. 34
[28] N.T. 34
[29] N.T. 37-38.
[30] N.T. 25-26, 38
[31] N.T. 25-26
[32] N.T. 38-39

testified that he had a conversation about the dog with Defendant, but he would not really call it a disagreement.[33]

Following the conclusion of the testimony on April 15, 2014, this Court found Defendant guilty beyond a reasonable doubt of driving under suspension.[34] Defendant was sentenced to incarceration for a period of not less than 90 days.

## Discussion

Defendant complains that there was insufficient evidence to sustain his conviction for driving under suspension, because Trooper Mark did not actually witness Defendant driving and only relied on the statements made by Gordon and Amanda, who he claims both have a bias against him.

When reviewing the sufficiency of the evidence, an appellate court views all the evidence admitted at trial in the light most favorable to the verdict winner to conclude whether there was sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Costa-Hernandez, 802 A.2d 671, 673 (Pa. Super. 2002). The appellate court may not weigh the evidence and substitute its own judgment for that of the fact-finder. Id. The trier of fact, while determining the credibility of witnesses, is free to believe all, part, or none of the evidence. Commonwealth v. Herb, 852 A.2d 356, 361 (Pa. Super. 2004).

In order to sustain a conviction for driving under suspension, the Commonwealth must show that Defendant drove a motor vehicle on a highway or traffic way at a time when Defendant's operating privilege is suspended or revoked for a reason related to a

---

[33] N.T. 18
[34] N.T. 48

previous DUI. 75 Pa.C.S.A. § 1543(b)(1).[35] The critical element, in this case, is whether Defendant was driving. Costa-Hernandez, 802 A.2d at 673. In order to prove that one "drives" a vehicle, the Commonwealth must prove that the car was in motion at the time in question. Id. at 674. However, the Commonwealth does not need to produce direct evidence of driving, but may instead rely on circumstantial evidence that the vehicle had been in motion in order to meet its burden. Id.

At the de novo summary trial, the Commonwealth presented two witnesses who both testified they saw Defendant driving on September 29, 2013. Defendant testified he was not driving and also presented two witnesses who testified he was not driving. As Trooper Mark did not see Defendant driving, the evidence comes down to the credibility of the witnesses.

Defendant argues that the Commonwealth's witnesses, Amanda and Gordon, are not credible because they both had problems with Defendant in the past and exhibited a clear bias against him at trial. Defendant implied that Amanda only informed Trooper Mark that she saw Defendant driving that day once it became clear that Defendant would not be charged with breaking her car window.[36] However, Amanda also testified that she was not aware that Defendant was unable to drive prior to this incident, because Defendant had told her about his special international license. Defendant also implied that Gordon had a problem with Defendant because Defendant did not like the fact that Gordon had a dog. However, Gordon did not seem to think

---

[35] Defendant does not appear to contest the element of driving on a highway or traffic way. There was testimony by Amanda that Defendant was in fact driving on Holly Pike, Route 34, satisfying this element. N.T. 24. Defendant also does not contest that he had notice of his license suspension. Trooper Mark testified that after reviewing Defendant's certified driving history from PennDOT, she was able to see that Defendant had notice of his Pennsylvania driver's license suspension. N.T. 8; Com. Ex. 1.
[36] See N.T. 25

A-6

there was a real disagreement or problem with Defendant. It did not appear to this Court, as the fact-finder, that Amanda and Gordon were clearly biased against Defendant.

Instead, Defendant would have this Court believe that the witnesses who testified on his behalf were not biased. However, Defendant's witnesses were, perhaps, even more biased than the Commonwealth's witnesses. Defendant himself certainly had a personal stake in the outcome of the trial and an interest in keeping himself out of jail. Defendant's other witnesses consisted of Claudine Bond, his wife, and Martin Brinton, his former co-worker and friend of several years. These are not unbiased witnesses. Claudine Bond admitted on the stand that she was also charged and found guilty of Permitting Violation of Title for allowing Defendant to drive the Ford Ranger which was registered to her while his driver's license was suspended.[37] Claudine, therefore, also has a huge interest in Defendant being found not guilty. She stated she was appealing her conviction. This means that if the Defendant was found not guilty her guilty verdict would likely be reversed.

Martin Brinton testified that he had been friends with the Defendant for 3 to 3 ½ years. It was clear from examining the Defendant's driving record (Comm. Ex. No. 1), that the Defendant's license status from 2005 on was listed as suspended/ cancelled/ revoked/expired. Frankly, it appears that the Defendant will not be eligible to apply for a new driver's license until June 28, 2020. Brinton testified that in all the time he knew the Defendant he never saw him drive and that the Defendant's wife always was the person driving. Brinton says he never discussed this clearly unusual circumstance with the

---

[37] N.T. 36

A-7

Defendant because he was "always raised to mind your own business."[38] This Court finds Mr. Brinton's testimony totally incredible. After hearing the witnesses testify and viewing their demeanor on the stand, this Court found the Commonwealth's witnesses to be more credible than Defendant and the witnesses he presented.

In addition to the direct evidence of the witnesses who saw Defendant driving, there was other circumstantial evidence tending to show that Defendant drove that day. When Trooper Mark arrived, Defendant was at his new apartment, along with the truck, and Claudine was at the old apartment. Gordon heard Claudine call Defendant and tell him not to drive back. Shortly thereafter, Defendant was seen walking back from his new apartment. If Defendant was at the new apartment, along with his truck, it is logical to conclude that Defendant drove the truck to the new apartment, especially after two witnesses saw him drive.

Defendant also testified that he had an international driver's license. He indicated he was studying the UCC (presumably the Uniform Commercial Code) and "sovereignty." These terms are familiar to the Court and indicated that the Defendant may have considered himself a "sovereign citizen" who is not required to follow the mandates of state law. Defendant indicated that he believed his international driver's license gave him permission to drive, even though his Pennsylvania license was suspended.[39] In fact, "an international driving permit...does not permit a Pennsylvania resident whose driving privileges had been suspended to operate a motor vehicle in Pennsylvania." Commonwealth v. Soder, 906 A.2d 502, 503 (Pa. Super. 2006). While Defendant maintained he did not drive that day, the fact that Defendant believed he

---

[38] N.T. 31-32
[39] N.T. 40, 41, 43

A-8

could drive, combined with all the other evidence establishes that Defendant did in fact drive a vehicle on September 29, 2013, beyond a reasonable doubt.

After considering all the evidence presented, including two eye-witnesses who saw Defendant driving, there was enough evidence for this Court to conclude that Defendant was guilty of the offense of driving while operating privilege is suspended or revoked beyond a reasonable doubt.

## Conclusion

This Court did not err in finding sufficient evidence to convict Defendant of driving under suspension beyond a reasonable doubt. The Commonwealth's witnesses did not exhibit a clear bias against Defendant such that their testimony was not credible.

By the Court,

_____

M. L. Ebert, Jr.,

District Attorney's Office

F. Clay Merris, IV, Esquire
Attorney for Defendant