J-A33006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| D.R.L. | |
| Appellant | No. 399 WDA 2016 |

Appeal from the Judgment of Sentence January 26, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002775-2014

BEFORE:  LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 17, 2017**

D.R.L. appeals from the judgment of sentence, entered in the Court of Common Pleas of Erie County, following his convictions for rape of a person less than 13 years old,[1] two counts of involuntary deviate sexual intercourse with a person less than 13 years old,[2] sexual assault,[3] two counts of indecent assault of a person less than 13 years old,[4] corruption of a minor,[5] and endangering the welfare of children.[6]  Upon review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 P.S. § 3121(a)(6).

[2] 18 P.S. § 3123(a)(6).

[3] 18 P.S. § 3124.1.

[4] 18 P.S. § 3126(a)(7).
*(Footnote Continued Next Page)*

In February 2014, K.R. and his half-brother G.B. made a report to the Erie Police Department alleging that D.R.L., their cousin-by-marriage, had sexually abused them during their childhoods. The abuse occurred mostly when their mother, R.R., took them to be babysat at the home of her cousin, Kathy, who was D.R.L.'s wife. K.R. was abused when he was approximately eight to thirteen years old. G.B., eight years older than K.R., was abused from the time he was approximately five to thirteen years of age. The brothers were never abused together, and were each unaware that the other had been abused until G.B. disclosed the abuse to his mother, R.R., in an effort to explain his self-estrangement from various family members. R.R. then contacted K.R., who admitted that D.R.L. had also abused him. They subsequently discovered that their cousin, D.R.L.'s oldest daughter, had given birth to a baby boy and planned to move back to Erie to be closer to her father. In an effort to protect the baby from abuse by D.R.L., the brothers disclosed the abuse to their cousin, who encouraged them to go to the police.

On or about March 3, 2014, the Erie Police Department forwarded to Detective Joseph Spusta the information concerning the sexual abuse allegations against D.R.L. and the following day Detective Spusta

*(Footnote Continued)* ───────────────

[5] 18 P.S. § 6301(a)(1)(ii).

[6] 18 P.S. § 4304(a)(1).

interviewed K.R. On April 11, 2014, Detective Spusta conducted a one-way consensual phone call intercept between K.R. and D.R.L., in which K.R. confronted D.R.L. about the past abuse. D.R.L. neither confirmed nor denied the allegations, but claimed he had no memory of them. Detective Spusta interviewed D.R.L. on May 22, 2014, and he again claimed he had no memory of the abuse but neither confirmed nor denied the claims. On August 29, 2014, Detective Spusta filed charges against D.R.L. Detective Spusta did not interview G.B. until June 2015, and no charges were brought concerning D.R.L.'s alleged abuse of G.B., as the statute of limitations had run.

A hearing on a pre-trial motion *in limine* was held on July 13, 2015 to determine the admissibility of G.B.'s testimony regarding his abuse at the hands of D.R.L. The court held that the testimony was admissible to demonstrate a common plan, scheme or design pursuant to Pa.R.E. 404(b).

Following a two-day trial, a jury convicted D.R.L. of the aforementioned charges. The court sentenced D.R.L. on January 26, 2016, to 21 to 42 years' incarceration and ordered that he be classified a sexually violent predator under the Sex Offender Registration and Notification Act (SORNA)[7] and register as such for life. D.R.L. filed a motion to

---

[7] 42 Pa.C.S.A. §§ 9799.10-9799.41

modify/reconsider sentence on February 1, 2016, which the court denied on March 4, 2016.

D.R.L. filed a timely notice of appeal on March 16, 2016, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, D.R.L. raises the following issue for our review:

> Whether the [trial] court committed reversible error when it allowed a Commonwealth witness to testify concerning uncharged criminal allegations that [D.R.L.] had also sexually assaulted that witness?

Brief for Appellant, at 13.

> In reviewing an evidentiary ruling by the trial court,
>
> our standard of review is one of deference. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Herb***, 852 A.2d 356, 363 (Pa. Super. 2004) (citations omitted).

D.R.L. asserts that the trial court abused its discretion when it allowed the Commonwealth to introduce evidence of G.B.'s uncharged sexual abuse. Specifically, D.R.L. asserts that the trial court erred when it allowed G.B. to testify regarding nearly ten years of alleged abuse he endured at the hands of D.R.L. prior to the abuse of K.R. D.R.L. argues that the dispositive issue before the jury was K.R.'s credibility. D.R.L. asserts that G.B.'s testimony

- 4 -

regarding separate, uncharged abuse inflamed and prejudiced the jury against D.R.L. such that "the defense's ability to have the jury carefully and objectively consider K.R.'s credibility was destroyed." Brief for Appellant, at 14. D.R.L. also argues that the distance in time between the boys' abuse rendered G.B.'s testimony inadmissible.

Moreover, D.R.L. asserts that even if G.B.'s testimony were admissible under one of the exceptions set forth in Rule 404(b), the trial court nevertheless erred by admitting the testimony because its probative value was outweighed by its potential for unfair prejudice. D.R.L. argues that G.B.'s testimony was actually introduced with the improper purpose of demonstrating D.R.L.'s propensity to commit this type of crime, which is explicitly prohibited by Rule 404(b).

Evidence of other crimes is not precluded merely because it prejudices the defense. **Commonwealth v. Brown**, 414 A.2d 70, 75 (Pa.1980). Indeed, all evidence of guilt is prejudicial to the defense; the Rules of Evidence only prohibit unfair prejudice. **Commonwealth v. Hairston**, 84 A.3d 657, 670 (Pa. 2014). As our Supreme Court has summarized:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (citations omitted).

Here, the trial court admitted G.B.'s testimony for the limited purpose of demonstrating D.R.L.'s common plan, scheme, or design based on the similar relationship of the two boys to D.R.L. and the common pattern of D.R.L.'s abuse of the boys. While the specifics vary slightly, the abuse followed similar progressions in each case. Both boys testified that the abuse happened primarily in D.R.L.'s home during his caretaking duties, as well as in his car in empty lots and at the cemetery where D.R.L. worked. The abuse began for both boys at very young ages with fondling by D.R.L., which progressed to mutual masturbation, oral sex, and culminated in D.R.L. performing anal sex upon each of the victims. Each boy also testified to D.R.L.'s coercive nature, stating that he acted as if they were "buddies" and that his actions were normal. Both boys testified that the abuse in D.R.L.'s home generally occurred while others were present in the household. Furthermore, neither boy reported the abuse out of fear of D.R.L., though only G.B. remembers actually being threatened by D.R.L.

In arguing that G.B.'s testimony falls under the common plan exception of Rule 404(b), the Commonwealth relies on *Commonwealth v. Frank*, 577 A.2d 609 (1990). There, a counselor working with troubled orphans was charged with molesting one of his patients. At trial, the Commonwealth sought to introduce testimony from six other patients who alleged similar abuse by the defendant, the most recent of which occurred

approximately three to four years prior to the conduct giving rise to the charges. The trial court allowed the testimony and the counselor was ultimately convicted. This Court, in affirming the trial court, set forth the appropriate standard for determining the application of the common plan exception:

> [A] determination of whether evidence is admissible under the common plan exception must be made on a case by case basis in accordance with the unique facts and circumstances of each case. However, we recognize that in each case, the trial court is bound to follow the same controlling, albeit general, principles of law. When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Id*. at 614. The Court rejected the defendant's argument that evidence of the uncharged acts occurring three to four years prior were too remote in time to be admissible.

Here, as in *Frank*, the abuse of G.B. ended approximately three years prior to when the abuse of K.R. began. "While remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under [the "common scheme"] theory, the importance of the time period is inversely proportional to the similarity of the crimes in question." *Commonwealth v. Miller*, 664 A.2d 1310, 1319 (Pa. 1995). As noted *supra*, the similarity between D.R.L.'s crimes against the two boys is striking. The boys were roughly the same age range during the abuse. The nature of the sexual contact between D.R.L. and the boys followed the same progression. Both boys were abused while D.R.L. acted in the role of caregiver. Finally, the location of the abuse – D.R.L.'s residence and car, as well as the cemetery at which he worked – was the same in each case. Since the pattern of abuse committed upon his victims was so distinct, we cannot find that the trial court abused its discretion in concluding that the three-year time period between the victimization of G.B. and K.R. was not so excessive as to render G.B.'s testimony overly prejudicial.

> With regard to prejudice, we have previously noted:
>
> Whether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party. Here, the Commonwealth was required to prove that a non-consensual touching occurred, the purpose of which was sexual gratification. [The defendant] denies that the

touching occurred, and since the uncorroborated testimony of the alleged victim in this case might reasonably lead a jury to determine that there was a reasonable doubt as to whether [the defendant] committed the crime charged, it is fair to conclude that the other crimes evidence is necessary for the prosecution of the case. Without doubt, the other crimes evidence would be prejudicial to [the defendant.] That is what it is designed to be. On the facts of this case, however, it is not unduly prejudicial, as it is required for the Commonwealth's case.

*Commonwealth v. Ardinger*, 839 A.2d 1143, 1145–46 (Pa. Super. 2003) (citation omitted).

Similarly, here, the Commonwealth was faced with the task of proving its case based on the uncorroborated testimony of K.R., whose abuse had occurred between fifteen and twenty years prior. D.R.L. denied the abuse had occurred. Accordingly, G.B.'s testimony, demonstrating a pattern of conduct by D.R.L., was instrumental to the Commonwealth proving, beyond a reasonable doubt, that D.R.L. had committed the crimes of which he was accused. Under these circumstances, we cannot say that the probative value of G.B.'s testimony was outweighed by its prejudicial effect.

Lastly, we note that the trial court gave the jury a limiting instruction regarding the narrow purpose for which they were to consider the evidence of G.B.'s abuse. Specifically, the court instructed the jury as follows:

Now, you heard evidence tending to show that the defendant was guilty of other criminal conduct for which he is not on trial. I am speaking of the testimony of [G.B.] The evidence – or that evidence is before you for a limited purpose, that is, the purpose of tending to show a common scheme or plan on behalf of the defendant. This evidence must not be considered by you in any way other than for the purpose I have just stated. You must not regard this evidence as showing that the defendant is a person

of bad character or criminal tendency from which you might be inclined to infer guilt.

N.T. Trial, 10/22/15, 89-90. It is well-settled that the jury is presumed to follow the trial court's instructions. *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016), citing *Commonwealth v. Travaglia*, 28 A.3d 868, 882 (Pa. 2011).

For all of the foregoing reasons, we find that the trial court did not abuse its discretion in admitting the prior bad act testimony of G.B. under the common plan exception pursuant to Rule 404(b).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2017