J-S04024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONALD KNIGHT | |
| Appellant | No. 2540 EDA 2015 |

Appeal from the Judgment of Sentence August 12, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011625-2014

BEFORE:  SHOGAN, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                              **FILED APRIL 18, 2017**

Donald Knight appeals from the judgment of sentence imposed on August 12, 2015, in the Court of Common Pleas of Philadelphia County, following his conviction by the trial judge on the charges of attempted burglary, attempted criminal trespass (breaking into a structure), possession of an instrument of crime, and criminal mischief (tampering with property).[1] Knight was sentenced to nine to twenty-three months' incarceration, followed by three years of reporting probation.[2]  In this timely appeal,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502(a)(4), 3503(a)(1)(ii), 907(a), and 3304(a)(2), respectively.

[2] The incarceration and probation was imposed on the attempted burglary charge.  Knight received no further punishment on the other charges.

Knight claims the trial court violated the *corpus delicti* rule by allowing the introduction of Knight's statement when no *corpus* of the crime had been shown and then in considering that statement when the *corpus* had not been proven beyond a reasonable doubt. After a thorough review of the certified record, the submissions by the parties and relevant law, we affirm.

Initially,

Our standard of review for a challenge to the *corpus delicti* rule is well-settled.

> The *corpus delicti* rule is designed to guard against the "hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed. The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's **admission** of the accused's statements and the second step concerns the fact finder's **consideration** of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

***Commonwealth v. Young***, 904 A.2d 947, 956 (Pa. Super. 2006), *appeal denied*, 591 Pa. 664, 916, A.2d 633 (2006) (quoting ***Commonwealth v. Rivera***, 828 A.2d 1094, 1103-04, n. 10 (Pa. Super. 2004) *appeal denied*, 577 Pa. 672, 842 A.2d 406 (2004)) (internal quotation marks omitted) (emphasis in original).

Additionally,

The *corpus delicti* rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Herb***, 852 A.2d 356, 363 (Pa. Super. 2004) (citations omitted).

***Commonwealth v. Hernandez***, 39 A.3d 409, 410-11 (Pa. Super. 2012).

We recite the underlying facts of this matter as related by the trial court in its Pa.R.A.P. 1925(a) opinion.

Philadelphia Police Officer William Benson testified that on July 9, 2014 at approximately 2:30 a.m. his tour of duty took him to 100 East Coulter Street, Philadelphia, Pennsylvania. (N.T. 5/22/15 p. 10). Officer Benson stated that there is a convenience store at that location. ***Id***. Officer Benson stated that upon arrival with his partner, Officer Baldino, he observed that the metal grated door at the rear of the convenience store was pried away. (N.T. 5/22/15 pp. 10-11). Officer Benson testified that his partner, Officer Baldino, then found a crowbar directly to the left of the grated door on a ledge about five (5) or six (6) feet tall. (N.T. 5/22/15 pp. 11 -12). Next, Officer Benson stated that he surveyed the area for a suspect. (N.T. 5/22/15 p. 14). Officer Benson observed his supervisor arrive on the scene and

pull out her cell phone on location to call police radio. *Id*. Based on the information that was communicated to him, Officer Benson went to 107 East Coulter Street where he found [Knight] on the porch in a black hoody, hidden, crouched behind a grill in a fetal position. (N.T. 5/22/15 pp. 15-16).

Officer Benson placed [Knight] in custody and observed gloves in [Knight's] left pocket, a small flashlight in [Knight's] right pocket, and a second crowbar within arm's reach from [Knight] on the patio. (N.T. 5/22/15 pp. 15-17).

Officer Benson identified Commonwealth Exhibit 2 (C-2), a photograph of the convenience store, as what the convenience store looked like on July 9, 2014. (N.T. 5/22/15 pp. 17-18). Officer Benson then identified Commonwealth Exhibit 3 (C-3), two photographs, as fair and accurate depictions of the property at the time of the incident. (N.T. 5/22/15 p. 18). He explained that the top photograph pictured the side of the convenience store and the bottom photograph displayed the door that was pried open. *Id*. Officer Benson also identified Commonwealth Exhibit 6 (C-6) as an accurate photograph of the damage done to the convenience store door that was pried open. (N.T. 5/22/15 pp. 19-20).

Next, the Commonwealth questioned Officer Benson about Commonwealth Exhibit 7 (C-7). (N.T. 5/22/15 p. 20). Officer Benson described C-7 as a photograph taken directly left of the grated door picturing a ledge where the first crowbar was located. *Id*. Lastly, the Commonwealth showed Officer Benson Commonwealth Exhibits 8 (C-8) and 9 (C-9). (N.T. 5/22/15 p. 20). Officer Benson stated that C-8 pictured the porch area and was an accurate and fair depiction of the property he observed. Id. He further stated that C-9 pictured the view from the porch looking directly across the street through the grated door. (N.T. 5/22/15 pp. 21-22).

Officer Benson testified that the first crowbar was placed on Property Receipt No. 3155296 and that the other recovered items were placed on Property Receipt No. 3155297 marked as Commonwealth Exhibit 1 (C-1). *Id*.

On cross-examination, Officer Benson testified that the property receipt was created in his presence and that the first crowbar was found on a ledge next to the door. (N.T. 5/22/15 p. 16).

Defense counsel asked Officer Benson to re-examine C-1 as she read from the document: "Police Officer Baldino located the crowbar on the concrete ledge of the building surrounded by grass and weeds." (N.T. 5/22/15 p. 26). Officer Benson affirmed this statement. (N.T. 5/22/15 p. 27). Defense counsel then approached Officer Benson with C-8 and asked him to identify where he found the second crowbar on the picture. *Id*. Officer Benson stated that the second crowbar was within arm's reach from [Knight] and indicated that location on the picture. Id. Officer Benson testified that upon his arrival he noticed damage to the property but did not know when the damage occurred. Id. Officer Benson further stated that he did not know the age of the property but stated that it was not new and affirmed that paint was missing on some areas of the building (N.T. 5/22/15 pp. 27-28). Officer Benson could not recall if bricks were crumbling on the building. (N.T. 5/22/15 p. 28). Officer Benson stated that when he first arrived on the scene, another officer stopped a man in a white shirt near the convenience store at the front entrance which is on the same sidewalk as the rear entrance of the store. *Id*.

Detective John Schell testified that on July 9, 2015 at 3 p.m., he was assigned to the Northwest Detectives and was on duty to speak with [Knight]. (N.T. 5/22/15 p. 30). Detective Schell stated that he read [Knight] his *Miranda* Rights and that [Knight] wanted to make a statement. (N.T. 5/22/15 pp. 30-31). [Knight's] statement was marked as Commonwealth Exhibit 11 (C-11). (N.T. 5/22/15 p. 31). Detective Schell stated that the document contained the *Miranda* Warnings that he conducted and [Knight's] signature at the bottom of the page. (N.T. 5/22/15 p. 32). Detective Schell then identified the Defendant's signature on the second and third pages of the document. *Id*. He stated that [Knight] provided the information on the top of the page. *Id*. Detective Schell then read a portion of the document for the court:

QUESTION: Did you try to break into 100 East Coulter?
ANSWER: No, I wasn't trying to break in. I was just bored and playing around at three in the morning.
QUESTION: Why would I hear you kept dropping the –
ANSWER: I did it.
QUESTION: Did you get in?
ANSWER: No.
QUESTION: Did you take anything?

ANSWER: No.
QUESTION: Where did you try to access the building?
ANSWER: Rear door.
QUESTION: Would your DNA be on that crowbar?
ANSWER: Probably not.
QUESTION: Because you had gloves?
ANSWER: Something like that.

(N.T. 5/22/15 pp. 33-34). Detective Schell then read the last question:

QUESTION: Would you read over this statement after I print it out?
ANSWER: Yes.

(N.T. 5/22/15 pp. 34-35). Detective Schell stated that he observed [Knight] read over the statement. (N.T. 5/22/15 p. 35). He stated that [Knight] had an opportunity to make corrections at that time but did not. *Id*.

On cross-examination, Detective Schell stated he was not sure if [Knight] stated that he needed to go and get his mother. *Id*.[3]

Trial Court Opinion, 5/17/2016, at 2-5.

Regarding the first stage of the *corpus delicti* analysis, the trial judge determined that based on the evidence presented, the Commonwealth had provided *prima facie* evidence of a crime having been committed, thereby allowing Knight's self-incriminating statement to be admitted into evidence. The trial court found:

In the instant matter, Philadelphia Police Officer William Benson testified credibly that on May 15, 2014, while on duty, he was called to the location of a convenience store on 100 East Coulter

_____

[3] Knight was also questioned about another attempted break-in in the neighborhood earlier that night. Knight denied any involvement in that incident and claimed his mother could provide an alibi for that crime.

Street. Officer Benson stated that upon arrival he observed that the back door had been "pried away" and discovered a crowbar next to the door on a ledge. Photographs were admitted into evidence by the Commonwealth depicting the damage to the back door of the convenience store. Officer Benson's observations of the damage to the door of the property, the discovery of the crowbar found next to the door, and the Commonwealth's introduction of photographs displaying the damage to the door are sufficient for this court to find by a preponderance of the evidence that a crime occurred at 100 East Coulter Street.

Trial Court Opinion, 3/17/2016, at 9.

It is important to describe the actual damage done to the property, because the description "pried away" does not adequately convey the scene as depicted in the photographs introduced as evidence at trial. **_See_** Commonwealth Exhibits C-4 and 6. These photographs show a door made of metal grating attached to the back wall of the convenience store. This metal grate door prevented access to another, more traditionally appearing door. The back wall is made of cinder block. A cinder block was partially pried out of the wall at a place where the metal grate door apparently latches closed. Accordingly, this depiction, coupled with a crowbar found within feet of the damage, leads us to agree with the trial court that the Commonwealth had proved by a preponderance of the evidence that an

attempted break-in had taken place. Accordingly, the trial court properly allowed Knight's self-incriminating statement to be admitted into evidence.[4]

The second aspect of Knight's claim is that, having been admitted, there was yet insufficient evidence to prove the *corpus delicti* beyond a reasonable doubt, such that the incriminating statement could considered for purposes of guilt determination. This argument similarly fails.

The trial judge noted additional facts that led him to find that *corpus delicti* had been proven beyond a reasonable doubt.

> Moreover, Officer Benson testified that [Knight] was found nearby the scene of the attempted burglary at 107 East Coulter Street in a black hoody, crouched down behind a grill in a fetal position with a crowbar within arm's reach and gloves and flashlight in his pocket. [Knight's] (1) proximity to the scene of the crime at 107 East Coulter Street; (2) body position by hiding behind a grill; (3) manner of dress in a black hoody; (4) possession of gloves in his back left hand pocket; (5) possession of a small flashlight in his back right hand pocket; and (6) proximity to a crowbar within arm's reach, provide this court with sufficient evidence to conclude that [Knight] was involved in the criminal activity at 100 East Coulter Street based on the totality of the circumstances.

*Id*. at 9-10.

_____

[4] Although the trial court did not specifically rely on it, we are aware that the property receipt for the crowbar found near the convenience store contains the information that the police were called to the scene for a report of a burglary in process. *See* Commonwealth Exhibit 1. The property receipt was entered into evidence without limitation. N.T. Trial, 5/22/2015, at 38. We also note that the police knew to look on the porch, behind the grill, at 107 East Coulter based upon information Officer Benson's supervisor received in a phone call to police radio (the dispatcher). *Id.*, at 14-15.

Our independent review of the certified record leads us to conclude the trial court committed no error in determining that an attempted burglary had been committed at 100 East Coulter Street. Therefore, the trial court also properly considered Knight's statement as substantive evidence of his guilt.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2017