J-S31032-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MEGAN NICOLE SCHMITZ, | : | |
| | : | |
| Appellant | : | No.  456 MDA 2015 |

Appeal from the Judgment of Sentence September 16, 2014,
in the Court of Common Pleas of Centre County,
Criminal Division, at No(s): CP-14-CR-0001459-2013

BEFORE:    SHOGAN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED JUNE 21, 2016**

Megan Nicole Schmitz (Appellant) appeals from the judgment of

sentence entered following a non-jury trial after which she was convicted of

driving under the influence (DUI) – general impairment, DUI – high rate of

alcohol, and the summary offense of leaving the scene of an accident

involving damage to an unattended vehicle.[1]  We affirm.

---

[1] In its brief, the Commonwealth purports to "move[] to dismiss [Appellant's] brief in its entirety as the brief and reproduced record in this case w[ere] filed untimely." Commonwealth's Brief at 6.  **See** Pa.R.A.P. 2188 (providing that an appellee may move for dismissal of the matter if an appellant fails to file timely his designation of reproduced record, brief, or any required reproduced record).  To the extent the Commonwealth's request is proper, we deny it.  **See Commonwealth v. Sohnleitner**, 884 A.2d 307, 313 n.3 (Pa. Super. 2005) (noting that "dismissal under Rule 2188 is discretionary"); **Commonwealth v. Miller**, 787 A.2d 1036, 1038 n.5 (Pa. Super. 2001) ("In a footnote, the Commonwealth suggests that because Appellant's brief was untimely filed, his appeal should be dismissed. Although the Commonwealth could have moved for dismissal pursuant to

*Retired Senior Judge assigned to the Superior Court.

The trial court provided the underlying background of this matter as follows.

> At the non-jury trial, Lieutenant Barrett Smith testified he was on uniformed foot patrol detail on June 19, 2013, with Officer Michael Williams in connection with previous incidents of an unknown male randomly grabbing young females in the area. At about 1:20 A.M., he was in the rear parking lot of the police station when he observed two females, one blonde and one brunette, walking to a vehicle near the Days Inn. He observed the lights flash on that vehicle when they used the remote keyless entry. Lieutenant Smith knew at least one of the females got into the car. He heard the car start and as it backed up he heard a crash and knew that it obviously struck a parked vehicle. He saw the vehicle then rapidly "take off" and travel eastbound on Foster Avenue. When he heard the crash, he looked up and [Appellant's] car was "up against" a parked truck. He observed the car was a silver Mazda and he got into his police car to follow the vehicle.
>
> Lieutenant Smith drove on Pugh Street and then Beaver Avenue, eastbound toward Garner Street. Lieutenant Smith made a right from Beaver Avenue into the parking lot of Grace Lutheran Church to get to Foster Avenue. He drove west on Foster Avenue toward Garner Street where the vehicle was observed by a public works crew. As he approached Garner Street, the silver Mazda "took a pretty quick right hand turn from Garner Street onto Foster Avenue." As the vehicle turned, it "came over completely into [his] lane obstructing [his] forward travel" and he had to hit the brakes on the police cruiser. When the vehicle passed directly in front of him, he observed the driver to be the blonde female he had seen earlier; he activated his emergency lights and camera at that time. This occurred at 1:27 A.M. on June 19, 2013. [He agreed the video time stamp from his police cruiser reflected at time [*sic*] of 1:26 in the morning.] The vehicle then turned into the Grace Lutheran church parking lot. Ultimately, the vehicle was located in the Grace Lutheran church parking lot. The vehicle had a parking permit inside for 420 East Foster Avenue which is a house directly across the street from where the car was parked.

---

Pa.R.A.P. 2188, it did not do so. Per our discretion we will address the merits of the appeal.").

Lieutenant Smith and Officer Williams went to the front door at 420 East Foster Avenue and knocked. Matthew Agostinelli [(Agostinelli)], a resident at the home, answered the door but did not provide any useful information. Lieutenant Smith went to the police station, which was about two and one half blocks away, and used JNET to look up the photograph for the registered owner of the vehicle. He was able to identify the person on the JNET photo, [Appellant], as the same person he had observed minutes prior driving the vehicle. He then went back to the home, spoke to … Agostinelli again, and [Appellant] came out the front door and spoke with him. [Appellant] had an odor of alcohol when he spoke to her and he asked her if she had been drinking alcoholic beverages. [Appellant] responded that she had two vodka drinks at the bar but had nothing else after that at the house.

Officer Michael Williams also testified at the non-jury trial. He was assigned to patrol on the early morning of the incident. He and Lieutenant Smith were on foot patrol because there had been recent incidents of a male grabbing women in public. He was with Lieutenant Smith when he observed two females walking up the alley from the Mad Mex area towards Foster Avenue and proceed to the back parking lot. He observed a taller blonde female and a brunette female who was a bit shorter. Officer Williams testified that Mad Mex is the restaurant and bar that is attached to the Days Inn. He observed the blonde female get into the driver's side of the vehicle and back up. He saw the vehicle jolt a bit forward as he heard a crash. No one exited the vehicle. He then observed the vehicle pull out of the lot and make a quick turn toward the alley and head east. He was approximately fifteen to twenty yards away when he made these observations.

Officer Williams chased on foot and got close enough as the vehicle was driving away to see that the blonde female was still driving. After they located [Appellant] at the Foster Avenue home, he spoke with her along with Lieutenant Smith and noticed a strong odor of alcohol. He also observed her to sway when standing. Field sobriety testing was administered and [Appellant] made three clues on the walk and turn test which was unsatisfactory and made two clues on the one leg stand which was a failure.

Officer Williams had an opportunity to examine the truck for damage immediately following the impact and he observed damage to the front license plate holder and front bumper. The license plate holder was bent to a forty[-]five degree angle. He also observed debris on the ground which he described as white pieces of clips.

The parties stipulated that [Appellant's] blood was drawn at Mount Nittany Medical Center at 3:20 A.M., on June [19], 2013 by Christina Tice.[ Appellant's BAC was determined to be .141% at the time of the blood draw.]

Trial Court Opinion, 6/16/2015, at 2-4 (citations omitted).[2]

Following the non-jury trial, Appellant was convicted of the aforementioned crimes. She was sentenced on September 16, 2014, to a six-month term of intermediate punishment for her conviction for DUI – high rate of alcohol.[3] The trial court further directed that Appellant's term of intermediate punishment include a period of restrictive intermediate punishment of 15 days in an in-home detention program effective October 13, 2014, upon completion of which Appellant was to serve the remainder of her sentence on standard probation under the supervision of the Centre County Probation and Parole Department. Appellant filed a post-sentence motion, which was denied. This appeal followed.

---

[2] Agostinelli and Amber Pistella (Pistella) testified at the non-jury trial on behalf of Appellant. Agostinelli's testimony mainly related to damage Appellant's car had prior to the incident in question and his interactions with police on that date, as he lived at 420 East Foster Avenue. N.T., 5/30/2014, at 91-101. Pistella testified as a character witness on behalf of Appellant. *Id.* at 102-06.

[3] Appellant received no further penalty for the remaining convictions.

On appeal, Appellant presents the following issues for our consideration:

I. Did the [trial court] err in denying the defense motion for a dismissal pursuant to the *corpus delicti* rule?

II. Did the [trial court] err in finding [Appellant] guilty of DUI[ – general impairment], when there was insufficient evidence as to her condition at the time of any driving?

III. Did the [trial court] err in finding [Appellant] guilty of DUI[ – high rate of alcohol], when there was insufficient evidence as to the timeframe of any driving and the timeframe of any alcohol consumption?

IV. Did the [trial court] err in finding [Appellant] guilty of [leaving the scene of an accident involving damage to an unattended vehicle], when there was insufficient evidence that [Appellant] was the driver of the vehicle in question when officers heard a mild impact with another vehicle?

V. Did the [trial court] err in finding [Appellant] guilty of [leaving the scene of an accident involving damage to an unattended vehicle], when there was insufficient evidence that the vehicle impacted had sustained damage?

Appellant's Brief at 4-5 (citations and suggested answers omitted).

Appellant first argues that the Commonwealth would not be able to establish the elements of her DUI convictions without inculpatory statements made by her[4] and that the trial court erred in denying her motion for a dismissal pursuant to the *corpus delicti* rule on the basis that the closely related crime exception applied.

---

[4] Appellant states that she "made inculpatory statements to members of the State College Police Department, including that she recalled taking a wide turn from Foster Street onto Garner Street, and that she had been drinking alcohol." Appellant's Brief at 8.

Our standard of review for a challenge to the *corpus delicti* rule is well-settled.

> The *corpus delicti* rule is designed to guard against the "hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed. The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

Additionally,

> The *corpus delicti* rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment

- 6 -

that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Hernandez*, 39 A.3d 406, 410-11 (Pa. Super. 2012)

(citation omitted) (emphasis omitted).

> In addition, an exception to the rule of *corpus delicti* exists, which is commonly referred to as the "closely related crimes exception." Pursuant to this exception, inculpatory statements may be admissible as to all crimes charged even though the Commonwealth's independent evidence is able to establish the *corpus delicti* of only one. For the exception to apply, the relationship between the crimes charged must be sufficiently close so as to ensure that the purpose underlying the *corpus delicti* rule is not violated.
>
> > The purpose behind the *corpus delicti* rule is the ultimate consideration in determining whether two crimes are closely related so as to implicate the exception. Where the relationship between the crimes to which the defendant has confessed is close and the policy underlying the *corpus delicti* rule—to avoid convictions for crimes that did not occur—is not violated, the exception renders the confession admissible for all closely related crimes.
>
> Thus, where the Commonwealth establishes the *corpus delicti* of one crime, an appellant's inculpatory statements may be admissible as evidence for all crimes which are closely related. Whether the crimes are sufficiently close to justify invoking the exception must be determined on a case by case basis.

*Commonwealth v. Herb*, 852 A.2d 356, 363-64 (Pa. Super. 2004)

(citations and emphasis omitted).

The trial court concluded that the above exception applied on the basis

that "the Commonwealth clearly was able to establish the body of [the crime

of leaving the scene of an accident involving damage to an unattended

vehicle] absent any admission of [Appellant] as set forth in the above summarized testimony of Lieutenant Smith and Officer Williams." Trial Court Opinion, 6/16/2015, at 5. Appellant presents two challenges to the trial court's conclusion, arguing that the offense of leaving the scene of an accident involving damage to an unattended vehicle is (1) not a "crime" and (2) not closely related to the DUI charges in the instant matter. Appellant's Brief at 9-10. Upon review, we conclude that Appellant's arguments are meritless.

With respect to Appellant's first challenge, our Supreme Court has held that "[t]he fact that one of the crimes at issue is of a different grade in contrast to the other crime sought to be linked to the accused is of no moment when looking at the general purpose for which the *corpus delicti* rule was created. Thus, we see no logical reason why the closely related crime exception would not apply to offenses of different grades." ***Commonwealth v. Verticelli***, 706 A.2d 820, 825-26 (Pa. 1998), *abrogated on other grounds by* ***Commonwealth v. Taylor***, 831 A.2d 587, 595-96 (Pa. 2003).[5] In so doing, the Court specifically rejected Verticelli's argument that the exception was inapplicable because leaving the scene of an accident involving damage to an unattended vehicle or property is a summary offense

---

[5] In ***Verticelli***, the Court held that "the exception applies in situations where the crimes charged share a common element and are temporally related." ***Verticelli***, 706 A.2d at 824. In ***Taylor***, our Supreme Court held that "[t]he closely related crimes exception does not require that the crimes share a common element" and adopted the standard as described in ***Herb*** above. ***Taylor***, 831 A.3d at 594-96.

- 8 -

and thus not closely related to the misdemeanor offense of DUI. ***Id.*** at 825. Moreover, in ***Herb***, this Court concluded that "the summary offenses of double-parking … and driving on a DUI-related license suspension … are sufficiently close under the facts as they exist in this case to implicate the 'closely related crimes exception' to the *corpus delicti* rule," further evidencing the exception's applicability to summary offenses. ***Herb***, 852 A.2d at 364-65.

Appellant acknowledges ***Verticelli***'s holding, but argues that "missing from the discussion is a determination of whether [leaving the scene of an accident involving damage to an unattended vehicle] is a crime at all." Appellant's Brief at 9. Appellant argues that it is not a crime, as it is found in the Motor Vehicle Code and not the Crimes Code, is properly classified as a summary traffic offense, and would have been listed on the traffic docket had it been the sole offense charged. ***Id.*** Appellant cites no authority in support of her position. ***See Commonwealth v. Wrecks***, 931 A.2d 717, 722 (Pa. Super. 2007) ("An appellant … has the burden to convince us that there were errors and that relief is due because of those errors."). In light of the foregoing precedent and Appellant's unsupported argument, no relief is due.

As for Appellant's second challenge, Appellant contends that leaving the scene of an accident involving an unattended vehicle was not closely related to the DUI offenses because the offenses "are not only separated by

time and identification of suspect, but they fail to contribute to a fluid series of events." Appellant's Brief at 10. Appellant further contends that "[t]here is no independent evidence that [she] was under the influence of alcohol when her vehicle impacted the pickup truck" and that "the only evidence connecting [her] to the accident scene is Officer … Williams's testimony that he observed a blonde female enter the driver side of a vehicle similar to the one owned by Appellant." *Id.* at 9-10.

To the extent Appellant's argument is based on the lack of evidence identifying her as the suspect or placing her at the scene of the accident, we observe that "[t]he identity of the person responsible for the criminal act is not part of the *corpus delicti*." **Commonwealth v. Zugay**, 745 A.2d 639, 652 (Pa. Super. 2000). As for Appellant's argument that there is no independent evidence that she was under the influence of alcohol when her vehicle impacted the truck and that the offenses are separated by time and fail to contribute to a fluid series of events, we reject it for the following reasons.

The testimony elicited from Lieutenant Smith and Officer Williams establishes that at approximately 1:20 A.M., the officers saw a blonde female walking from the area of the Mad Mex restaurant and bar and get into the driver's seat of a Mazda. N.T., 5/30/2014, at 8-11, 54-55, 62-63, 75-77. As she pulled out of her parking space, she hit another vehicle and then proceeded to drive away without exiting the Mazda. *Id.* at 9-11, 33-

34, 63-65. Officer Williams observed damage to the vehicle the Mazda had hit. *Id.* at 66-68. This evidence establishes the *corpus delicti* of the offense of leaving the scene of an accident.

Additionally, Lieutenant Smith testified that, while in pursuit of the Mazda shortly after the incident, he encountered the Mazda when it turned onto Foster Avenue. *Id.* at 12-17. In so doing, the Mazda "came over completely into [his] lane obstructing [his] forward travel" and he had to hit the brakes on the police cruiser so the vehicle did not hit him. *Id.* at 14. At that point, he "had a clear unobstructed view of the driver" and "saw that it was the blond[e] female who was driving the car." *Id.* at 15. Lieutenant Smith eventually located the Mazda parked in the Grace Lutheran Church parking lot and, upon investigation, he identified the owner of the parked Mazda as the woman he had seen driving it, Appellant. *Id.* at 15, 21-22, 26-27, 56. Lieutenant Smith and Officer Williams then located Appellant at a house across the street from where the Mazda was parked, where they both detected an odor of alcohol on Appellant and Officer Williams noted her swaying as she stood. *Id.* at 22, 29-31, 46, 71, 79, 87. Officer Williams performed field sobriety tests on Appellant, which she failed and/or performed unsatisfactorily. *Id.* at 72-73, 81, 87. At 3:20 A.M., Appellant had her blood drawn at Mount Nittany Medical Center and her BAC was determined to be .141%. *Id.* at 88-89.

Upon review, we conclude that the DUI offenses share a sufficiently close relationship with the offense of leaving the scene of an accident involving damage to an unattended vehicle as, contrary to Appellant's assertion, the offenses were all part of one continuing incident. ***Taylor***, 831 A.2d at 596 (concluding that crimes shared sufficiently close relationship because "there was one continuing incident occurring at roughly the same time, and the victim of each crime … was the same"). Appellant's statements "and [the] independent evidence presented by the Commonwealth are sufficient to overcome the danger of a conviction where no crime was in fact committed." ***Id.*** Because the crimes at issue herein were sufficiently close so as to render the closely related crime exception applicable, Appellant's claims fail.

The remainder of Appellant's issues on appeal challenge the sufficiency of the evidence to support her convictions.

> Our standard of review for challenges to the sufficiency of the evidence is well-settled:
>
> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its

burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Eichler***, 133 A.3d 775, 787 (Pa. Super. 2016).

Appellant's first two sufficiency challenges relate to her convictions for DUI – general impairment and DUI – high rate of alcohol. Appellant essentially argues that absent her inculpatory statements,[6] which should be excluded, there is insufficient evidence demonstrating that she drank prior to driving her vehicle and that she was impaired at the time she was driving.

With respect to the offense of DUI – general impairment, 75 Pa.C.S. § 3802(a)(1), the following is applicable.

> [S]ubsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol. With respect to the type, quantum, and quality of evidence required to prove a general impairment violation under Section 3802(a)(1), [we note that]:
>
> Section 3802(a)(1), like its predecessor [DUI statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.... The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include

---

[6] Appellant proffers an improper standard. We may not grant an arrest of judgment on a diminished record. ***See Commonwealth v. Gray***, 867 A.2d 560, 567 (Pa. Super. 2005) ("[I]n evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct.") (citation and internal quotation marks omitted).

but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit [present in other subsections in section 3802] for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

*Eichler*, 133 A.3d at 790 (citation omitted).

The offense of DUI – high rate of alcohol is defined as follows:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(b).

Put simply, based on the evidence as summarized above establishing Appellant's involvement in the accident, her dangerous driving thereafter, the officers' observations as to the odor of alcohol on Appellant and her swaying, her performance on the field sobriety tests, the results from the

- 14 -

blood draw, and her inculpatory statements, the evidence was sufficient to support her DUI convictions. **See Eichler**, 133 A.3d at 790-91 (concluding that the evidence was sufficient to support convictions for DUI – general impairment and DUI – highest rate of alcohol where eyewitness observed a truck driving erratically, swerving off the road, and striking an object; a little more than an hour after the accident, an officer observed Eichler's black pickup truck in his driveway with heavy damage; Eichler staggered towards the officer with a strong odor of alcoholic beverage and blood shot eyes, slurring his speech and appearing highly intoxicated; Eichler stated he had been drinking; and his blood taken less than 2½ hours after the accident revealed a BAC of .30%). Appellant's arguments to the contrary are without merit.

In her final two issues, Appellant argues that the evidence was insufficient to support her conviction for leaving the scene of an accident involving damage to an unattended vehicle. Appellant specifically argues that the evidence is insufficient to establish that she was the driver of the vehicle at the time of the accident, that the vehicle impacted had sustained "damage" as a result of the accident, or that she caused that damage. Appellant's Brief at 12-13. Appellant further argues that if the vehicle did sustain damage, it was *de minimis* and "the harm was 'too trivial to warrant the condemnation of conviction.'" **Id.** at 13 (quoting 18 Pa.C.S. § 312(a)(2)).

The offense of leaving the scene of an accident involving damage to an unattended vehicle is defined as follows.

> The driver of any vehicle which collides with or is involved in an accident with any vehicle or other property which is unattended resulting in any damage to the other vehicle or property shall immediately stop the vehicle at the scene of the accident or as close thereto as possible and shall then and there either locate and notify the operator or owner of the damaged vehicle or other property of his name, address, information relating to financial responsibility and the registration number of the vehicle being driven or shall attach securely in a conspicuous place in or on the damaged vehicle or other property a written notice giving his name, address, information relating to financial responsibility and the registration number of the vehicle being driven and shall without unnecessary delay notify the nearest office of a duly authorized police department. Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3745.

Again, the evidence summarized above establishes that a blonde female got into the driver's seat of the Mazda, hit a vehicle, and drove away without exiting the vehicle. Shortly thereafter, a blonde female was spotted driving the Mazda while being pursued by police. The police then identified the registered owner of the Mazda as the female they had seen driving it and further identified that female as Appellant. Further, Appellant "eventually … did state that she was driving the vehicle." N.T., 5/30/2014, at 71. This evidence was sufficient to establish Appellant's identity as the driver of the Mazda at the time of the accident.

With respect to whether the evidence was sufficient to establish that the vehicle impacted had sustained damage, Officer Williams testified that

he examined the truck following the impact. *Id.* at 66. Upon doing so, he observed damage to the front license plate holder, in that it was bent to a forty-five degree angle, damage to the front bumper, and debris on the ground which he described as "portions of white plastic that looked like clips to something." *Id.* at 66-68. This evidence was sufficient to establish that the truck sustained damage. In reaching this conclusion, we are unconvinced by Appellant's argument based on the *de minimus* nature of the damage caused. **See Commonwealth v. Smith**, 69 A.3d 259, 264 (Pa. Super. 2013) (rejecting the appellant's argument that the evidence was insufficient to support conviction for leaving the scene of an accident involving damage to an unattended vehicle where "there were no witnesses called, no report on any paint scrapes matching the SUV, no testimony from the vehicle owners on the damage caused or ability to cross examine them on the prior condition of the automobiles, there was [*sic*] only bald assertions from police that [there] were two damaged vehicles," concluding that although not substantial, the evidence "was sufficient to support the reasonable inference that the damage was caused by [the a]ppellant" because, *inter alia*, the police officer "observed two damaged parked cars" and the owners "confirmed the damage to the vehicles").[7]

---

[7] To the extent that Appellant relies on 18 Pa.C.S. § 312, that provision relates to the court's dismissal of a prosecution under certain circumstances, including where the conduct of the defendant "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of

- 17 -

Moreover, we likewise conclude that the evidence was sufficient to establish that Appellant caused that damage. Lieutenant Smith testified that he heard the Mazda start in the parking lot and as it backed up he heard a crash; when he looked up he saw the Mazda "up against" the truck. N.T., 5/30/2014, at 9-11, 33-34. Officer Williams also heard the crash and saw the Mazda "jolt a little bit forward" while it happened. *Id.* at 63-65, 77. The officers further testified that there was damage on the Mazda, and Officer Williams testified that he identified white clamps on the Mazda that were consistent with the ones he had seen on the ground. *Id.* at 40, 69-71. This evidence, together with the evidence establishing Appellant's identity as the driver and the testimony regarding the damage observed following the impact, is sufficient to establish that Appellant caused the damage to the truck. *Smith*, 69 A.3d at 264.

Based on the foregoing, Appellant has failed to establish that she is entitled to relief on any of her claims. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

conviction." 18 Pa.C.S. § 312(a)(2). Appellant has failed to preserve properly any issue with respect whether the trial court was required to dismiss the charge of leaving the scene of an accident involving damage to an unattended vehicle pursuant to this provision.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2016